UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

***AMENDED CIVIL MINUTES - GENERAL**

| Case No. | 5:13-cv-01563-CAS(SPx) | Date | February 10, 2014 |
|---|---|---|---|
| Title | CECIL SHAW V. JAR-RAMONA PLAZA LLC ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | | |
|---|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiff:

Tanya Moore (By Telephone)

Attorneys Present for Defendants:

A. Scott Ruygrok
Brittany Shugart
Richard Leonard

| Proceedings: | AMENDED ORDER RE: DEFENDANT JAR-RAMONA PLAZA, LLC'S MOTION FOR SUMMARY JUDGMENT (dkt. 34, filed January 7, 2014) |
|---|---|

# I. INTRODUCTION

On March 7, 2013, plaintiff Cecil Shaw filed this action against defendants Jar-Ramona Plaza, LLC ("Jar-Ramona"), Leslie's Poolmart ("Leslie's"), Dollar Tree Stores, Inc. ("Dollar Tree"), Radio Shack Corporation ("RadioShack"), Grocery Outlet, Inc. ("Grocery Outlet"), Grocery Outlet Hemet #100 Inc. ("Grocery Outlet #100"), and Mehnga Foods, doing business as Subway #33424 ("Subway"). Plaintiff asserts claims under (1) certain provisions of the American with Disabilities Act, 42 U.S.C. §§ 12182-83, (2) California's Unruh Act, Cal. Civ. Code § 51 et seq, and (3) California Health and Safety Code § 19955.

On January 7, 2014, Jar-Ramona filed a motion for summary judgment. Dkt. 34. On January 20, 2014, plaintiff filed his opposition, dkt. 42, and on January 23, 2014, Jar-Ramona filed its reply, dkt. 44. On February 10, 2014, the Court held a hearing. After considering the parties' arguments, the Court finds and concludes as follows.

# II. BACKGROUND

Plaintiff alleges that defendant Jar-Ramona owns the Ramona Plaza Shopping Center ("Plaza"), located at 1300-1480 East Florida Avenue in Hemet, California. Compl. ¶¶ 1-2, 7. Jar Ramona leases store space to commercial outlets within the Plaza, including its co-defendants Leslie's, Dollar Tree, RadioShack, Grocery Outlet, and Subway. For ease of reference, a diagram of the Plaza is set forth below:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

***AMENDED CIVIL MINUTES - GENERAL**

| Case No. | 5:13-cv-01563-CAS(SPx) | Date | February 10, 2014 |
|---|---|---|---|
| Title | CECIL SHAW V. JAR-RAMONA PLAZA LLC ET AL. | | |



UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**\*AMENDED CIVIL MINUTES - GENERAL**

| Case No. | 5:13-cv-01563-CAS(SPx) | Date | February 10, 2014 |
|---|---|---|---|
| Title | CECIL SHAW V. JAR-RAMONA PLAZA LLC ET AL. | | |

Jar-Ramona's Separate Statement of Uncontroverted Facts ("SSUF") ¶ 8; Plaintiff's Separate Statement of Genuine Disputes ("SSGD") ¶ 3; see also Belcher Decl. ¶ 2 (stating that this diagram accurately depicts the Plaza).

On several dates in 2011, 2012, and 2013, plaintiff, who is confined to a wheelchair, visited some of the stores within the Plaza, including Leslie's, Dollar Tree, Radioshack, Grocery Outlet, and Subway. See compl. ¶¶ 8, 10.[1] Plaintiff contends that he encountered several physical barriers and other issues that interfered with his ability to navigate the Plaza and constituent stores while in a wheelchair.

Specifically, plaintiff identifies the following five issues with respect to the Plaza's common areas ("Common Area Violations"):

1. "Plaintiff parked in a designated accessible parking space near the entrance to the Dollar Tree Facility, which parking space was narrow, making it difficult for Plaintiff to transfer between his vehicle and his wheelchair." Compl. ¶ 10(b)(1).

2. "The ramp from Plaintiff's parking space to the sidewalk leading to the entrance of the Dollar Tree Facility lacked protected edges, making it difficult and dangerous for Plaintiff to maneuver up and down in his wheelchair." Id. ¶ 10(b)(2).

3. "The ramp from the parking lot to the entrance of the Radio Shack Facility lacked protective edges, making it difficult and dangerous for Plaintiff to maneuver up and down in his wheelchair." Id. ¶ 10(c)(1).

---

[1] The Court notes that the record is devoid of evidence substantiating many of the essential background facts in this case. For instance, the Court is unable to locate any evidence—as opposed to allegations in pleadings—indicating that plaintiff in fact visited the Leslie's or Subway. Compare compl. ¶ 10 with Shaw Decl ¶ 2. However, because Jar-Ramona does not appear to dispute plaintiff's allegations concerning these basic background facts, the Court takes plaintiff's allegations in the complaint as true for purposes of deciding this motion. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Case 5:13-cv-01563-CAS-SP   Document 68   Filed 02/10/14   Page 4 of 12   Page ID #:908

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**\*AMENDED CIVIL MINUTES - GENERAL**

| Case No. | 5:13-cv-01563-CAS(SPx) | Date | February 10, 2014 |
|---|---|---|---|
| Title | CECIL SHAW V. JAR-RAMONA PLAZA LLC ET AL. | | |

4. "The sidewalk leading from the designated accessible parking space to the entrance of the Grocery Outlet Facility was extremely sloped, making it difficult for Plaintiff to maneuver his wheelchair to and from the entrance. Plaintiff required assistance from his wife, who was barely able to push him up the hill." Id. ¶ 10(d)(1).

5. "Plaintiff was unable to locate an accessible parking space near the entrance to the Subway Facility and was forced to park in a standard space which was improperly configured and lacked an access aisle, making it difficult for Plaintiff to transfer between his vehicle and his wheelchair." Id. ¶ 10(e)(1).

Plaintiff also identifies the following eight issues with respect to individual stores ("Store Violations"):

1. "The aisles within the Leslie's facility lacked necessary wheelchair clearances, making it difficult for Plaintiff to maneuver his wheelchair around the store. Plaintiff was limited to a small area near the cashier counter and was forced to wait there while his wife walked around the store and selected merchandise." Id. ¶ 10(a)(1).

2. "The cashier counter at the Leslie's facility was too high, making it difficult for Plaintiff to complete his transaction." Id. ¶ 10(a)(2).

3. "The aisles within the Dollar Tree Facility lacked necessary wheelchair clearances, making it difficult for Plaintiff to maneuver up and down in his wheelchair around inside the store." Id. ¶ 10(b)(3).

4. "Plaintiff needed to use the restroom at the Dollar Tree Facility; however, the route to the restroom was obstructed by boxes and merchandise, preventing Plaintiff from reaching the restroom." Id. ¶10(b)(4).

5. "The entrance door at the Radio Shack Facility was narrow, making it difficult for Plaintiff to enter the store. Plaintiff required assistance from his son to push his wheelchair through the narrow doorway as there was not enough room for Plaintiff's hands on either side of the wheelchair to wheel himself through." Id. ¶ 10(c)(2).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\*AMENDED CIVIL MINUTES - GENERAL**

| Case No. | 5:13-cv-01563-CAS(SPx) | Date | February 10, 2014 |
|---|---|---|---|
| Title | CECIL SHAW V. JAR-RAMONA PLAZA LLC ET AL. | | |

6. "The aisles within the Grocery Outlet Facility lacked necessary wheelchair clearances, making it difficult for Plaintiff to maneuver his wheelchair around inside the store." Id. ¶ 10(d)(2).

7. "Plaintiff needed to use the restroom at the Grocery Outlet Facility; however, the route to the restroom was obstructed by boxes and merchandise, preventing Plaintiff from reaching the restroom." Id. ¶ 10(d)(3).

8. "The aisles within the Subway Facility between the tables and chairs lacked necessary wheelchair clearances, making it difficult for Plaintiff to maneuver his wheelchair around inside the restaurant." Id. ¶ 10(e)(2).

## III. LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 &

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**\*AMENDED CIVIL MINUTES - GENERAL**

| Case No. | 5:13-cv-01563-CAS(SPx) | Date | February 10, 2014 |
|---|---|---|---|
| Title | CECIL SHAW V. JAR-RAMONA PLAZA LLC ET AL. | | |

n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

**IV. DISCUSSION**

As discussed above, plaintiff identifies thirteen separate accessibility issues within the Plaza that, he contends, impede his right to equal access. Plaintiff's first two claims assert that these issues violate the federal Americans with Disabilities Act ("ADA") and California's Unruh Act, respectively. Plaintiff explicitly predicates his claim under the Unruh Act on his assertion that defendants have violated the ADA. See compl. ¶¶ 36-37; Cal. Civ. Code § 51 ("A violation of the right of any individual under the federal Americans with Disabilities Act of 1990 (P.L. 101-3361) shall also constitute a violation of this section.").

Similarly, plaintiff's third claim asserts that these same accessibility issues also violate California Health and Safety Code § 19955, which "authorizes a disabled person to bring an action for injunctive relief if the person is denied equal access." Botosan v. Fitzhugh, 13 F. Supp. 2d 1047, 1052 (S.D. Cal. 1998). So far as the Court can discern from plaintiff's complaint, see compl. ¶¶ 41-45, this claim is also predicated on the defendants' alleged violations of the ADA.[2] Accordingly, because all three of plaintiff's claims involve identical issues, the Court will discuss them collectively in terms of the thirteen specific accessibility issues identified by plaintiff, discussed in Part II above. The Court now turns to the arguments raised in Jar-Ramona's motion for summary judgment.

---

[2] Alternatively, to the extent plaintiff's claim under California Health and Safety Code § 19955 aims to assert violations of accessibility standards other than those set forth by the ADA, the Court is unable to determine what those standards—or the violations thereof—might be. As such, the complaint would fail to comply with Fed. R. Civ. P. 8(a)'s instruction that a pleading must set forth " a short and plain statement of the claim showing that the pleader is entitled to relief."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**\*AMENDED CIVIL MINUTES - GENERAL**

| Case No. | 5:13-cv-01563-CAS(SPx) | Date | February 10, 2014 |
|---|---|---|---|
| Title | CECIL SHAW V. JAR-RAMONA PLAZA LLC ET AL. | | |

### A. Release of Common Area Violations

Jar-Ramona first argues that plaintiff previously released it from liability for the Common Area Violations, which all pertain to handicapped parking spaces and ramps in the parking lot. On October 11, 2013, plaintiff and Jar-Ramona's co-defendant Grocery Outlet signed a settlement agreement. SSUF ¶ 1. Sections 1.1 and 1.2 of the settlement agreement provide:

> 1.1. Plaintiff has filed a lawsuit, captioned Cecil Shaw v. JAR-Ramona Plaza LLC et al., Case No. EDCV13-1563-CAS-SP, in the United States District Court for the Central District of California (the "Action"), alleging that certain aspects of the facility known as Grocery Outlet, located at 1470 East Florida Avenue in Hemet, California and the common areas (including the parking area) appurtenant thereto ("the Grocery Outlet Facility") violate the accessibility requirements of Title III of the Americans with Disabilities Act ("ADA"), and applicable California state laws and regulations.
>
> 1.2 After considering the substantial expense and uncertainty associated with the Action, the Parties desire to settle all claims and disputes Plaintiff may have with the "Released Parties" relating to the operation of the Grocery Outlet Facility for valuable consideration. That desire manifests itself by concluding all pending litigation between the Parties relating to the Grocery Outlet Facility without admitting liability.

SSUF ¶¶ 2-3. The settlement agreement defines "Released Parties" to include:

> Defendant [Grocery Outlet, Inc.], and any other entity (present, future or former), known or unknown, whom Plaintiff might claim to be liable for the Grocery Outlet Facility, expressly including, but not limited to, Jar-Ramona Plaza, LLC…. Except however, that as to common areas appurtenant to the Grocery Outlet Facility and not covered in the Report (see Section 2.2 below), "Released Parties" shall not include Jar-Ramona Plaza, LLC."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\*AMENDED CIVIL MINUTES - GENERAL**

| Case No. | 5:13-cv-01563-CAS(SPx) | Date | February 10, 2014 |
|---|---|---|---|
| Title | CECIL SHAW V. JAR-RAMONA PLAZA LLC ET AL. | | |

Id. ¶ 4. The "Report," in turn, refers to an "Accessibility Survey" attached to the report. Id. ¶ 6. This survey, which was prepared by the firm Ashdown Architecture, Inc., identified purported violations of ADA requirements in the Grocery Outlet and surrounding areas. Id.

Jar-Ramona's argument turns on three points. First, the settlement agreement releases "all claims and disputes Plaintiff may have with the 'Released Parties' relating to the operation of the Grocery Outlet Facility." Second, Section 1.1 of the settlement agreement expressly defines "Grocery Outlet Facility" to include "the common areas (including the parking area) appurtenant thereto." Third, "Released Parties" expressly includes Jar-Ramona. Combining these three propositions, Jar-Ramona argues that it was released from all issues relating to "the common areas (including the parking area) appurtenant" to the Grocery Outlet—i.e., all of the Common Area Violations.

The Court finds this argument unpersuasive. First, Jar-Ramona's reading of the settlement agreement is linguistically untenable. If, as Jar-Ramona contends, the term "Grocery Outlet Facility" is defined to include common areas appurtenant to the Grocery Outlet store, why does the settlement agreement's definition of "Released Party" redundantly refer to "common areas appurtenant to the Grocery Outlet Facility"? Second, the definition of "Released Party" explicitly excludes Jar-Ramona "as to common areas appurtenant to the Grocery Outlet Facility and not covered in the Report." Although Jar-Ramona contends that the Report discusses handicapped spaces and ramps, see SSUF ¶ 7, a review of the Report indicates that it only addresses the common areas immediately surrounding the Grocery Outlet, rather than the common areas of the Plaza as a whole. The Report, for instance, discusses only 75 parking spaces, whereas the Plaza as a whole has 323 parking spaces. SSUF ¶ 18.

In light of these issues, the Court finds that the most sensible construction of the settlement agreement is that it only releases Jar-Ramona as to Common Area Violations in the area directly appurtenant to the Grocery Outlet. This construction of the settlement agreement accords with both the text of the settlement agreement and common sense. Grocery Outlet, which negotiated the settlement agreement, would have an interest in securing a release of Jar-Ramona for violations directly outside its store in order to insulate itself from potential indemnification liability. Conversely, Grocery Outlet would have no such interest in securing a release for Jar-Ramona as to the other Common Area Violations, for which Grocery Outlet had no potential liability. Accordingly, the Court finds that plaintiff has released Jar-Ramona from liability for the Common Area

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\*AMENDED CIVIL MINUTES - GENERAL**

| Case No. | 5:13-cv-01563-CAS(SPx) | Date | February 10, 2014 |
|---|---|---|---|
| Title | CECIL SHAW V. JAR-RAMONA PLAZA LLC ET AL. | | |

Violations involving areas directly outside the Grocery Outlet—i.e., the fourth Common Area Violation, which alleges that the ramp leading to the Grocery Outlet is too steep to ascend safely in a wheelchair. See Compl. ¶ 10(d)(1); Jar-Ramona Exhibit Book, Exhibit 2 at 14 (Ashdown Report discussing ramp to Grocery Outlet). The Court correspondingly finds that the settlement agreement did not release Jar-Ramona from liability for the other four Common Area Violations, which do not involve common areas directly outside the Grocery Outlet.

   **B. Other Common Area Violations**

      In the alternative, Jar-Ramona asserts that, even if plaintiff has not released it as to the Common Area Violations, there is nonetheless no genuine issue of material about whether it violated the ADA. First, Jar-Ramona argues that summary judgment is warranted as to the first and fifth Common Area Violations, which assert that the Plaza lacks proper handicapped parking spaces. Compl. ¶¶ 10(b)(1), (e)(1). Jar-Ramona asserts that the Plaza parking lot contains the proper number of spaces, which comply with all applicable size and layout requirements. SSUF ¶¶ 18-19, 22.

      In response, plaintiff does not dispute that the Plaza parking lot complies with applicable requirements concerning the number and layout of handicapped spaces. See Opp. 9-10. Plaintiff, however, contends that defendants remedied the defects subsequent to his visit to the Plaza by adding new spaces and enlarging old spaces. SSGD ¶¶ 11-12. Even assuming that plaintiff's visit to the Plaza did prompt modifications, however, this means that the first and fifth Common Area Violations "are no longer in dispute and are therefore moot." Parr v. L & L Drive-Inn Rest., 96 F. Supp. 2d 1065, 1087 (D. Haw. 2000). "If a challenged condition has been remedied by the defendant, a plaintiff has received everything to which he would have been entitled under the ADA, and the claim is usually moot." Kohler v. In-N-Out Burgers, 2013 WL 5315443 (C.D. Cal. Sept. 12, 2013); see also Hubbard v. 7-Eleven, Inc., 433 F. Supp. 2d 1134, 1147 (S.D. Cal. 2006) ("Accordingly, because the evidence before the Court shows Defendant has remedied the violation in accordance with Mr. Settle's recommendation, the issue is moot."). **\*Accordingly, the Court concludes that injunctive relief is not available for these violations, and that plaintiff's claims under the ADA and § 19955, as based upon the first and fifth Common Area Violations, should be dismissed as moot. Plaintiff's claim under the Unruh Act, however, should not be dismissed, as plaintiff may potentially recover damages for encountering accessibility violations, even if those violations are subsequently resolved. See Wilson v. Pier 1 Imports (US), Inc., 439 F.**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

***AMENDED CIVIL MINUTES - GENERAL**

| Case No. | 5:13-cv-01563-CAS(SPx) | Date | February 10, 2014 |
|---|---|---|---|
| Title | CECIL SHAW V. JAR-RAMONA PLAZA LLC ET AL. | | |

**Supp. 2d 1054, 1069 (E.D. Cal. 2006) ("[T]he court must conclude that defendants have cured the defect. Therefore, the court concludes that the issue is moot for the purposes of the ADA. However, the claim is not moot under the Unruh Act, since damages are still available . . . .").**

Jar-Ramona also seeks summary judgment as to the second and third Common Area Violations, which assert that the ramps leading up the Dollar Tree and RadioShack entrances lack protective edges. Compl. ¶¶ 10(b)(2), (c)(1). Jar-Ramona tenders evidence that the path of travel to the entrances of these store involve less than a 5% (or 1:20) incline, see SSUF ¶¶ 20-21, which Jar-Ramona contends is not a ramp under the governing ADA guidelines. See 2010 ADA Accessibility Guidelines § 106.5, available at http://www.ada.gov/regs2010/2010ADAStandards/2010ADAstandards.htm (defining ramp as a "walking surface that has a running slope steeper than 1:20"); Doran v. 7-Eleven, Inc., 524 F.3d 1034, 1048 (9th Cir. 2008) (explaining that the ADA Accessibility Guidelines set forth "the substantive standard of ADA compliance").

Plaintiff responds by arguing that his claim arises under a separate provision of the ADA standards that governs "curb ramps," which are defined as a "short ramp cutting through a curb or built up to it." 2010 ADA Accessibility Guidelines § 106.5. The Court, however, has reviewed section 406 of the Guidelines, which governs the construction of curb ramps, and is unable to locate any requirement for protective edges. Specifically, while section 406 incorporates by reference several requirements of section 405, the provision governing the construction of regular ramps, it does not incorporate section 405.9, which requires regular ramps to have edge protection. See id. § 406.1 ("Curb ramps on accessible routes shall comply with 406, 405.2 through 405.5, and 405.10."). As such, it appears that there is no requirement that the Dollar Tree and RadioShack curb ramps have edge protection. As such, the Court finds that summary judgment is warranted as to the second and third Common Area violations.

### C. Jar-Ramona's Liability for the Store Violations

Jar-Ramona also moves for summary judgment on plaintiff's claims arising out of the Store Violations. Jar-Ramona contends that these violations all allegedly took place in the constituent stores, and involved the layout and construction within those stores. Jar-Ramona contends that, as landlord, it lacks control over the layout and construction within the stores, and thus should not be held liable for the Store Violations. See SSUF ¶¶ 24-26 (stating that Jar-Ramona lacks control over internal arrangement of stores).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**\*AMENDED CIVIL MINUTES - GENERAL**

| Case No. | 5:13-cv-01563-CAS(SPx) | Date | February 10, 2014 |
|---|---|---|---|
| Title | CECIL SHAW V. JAR-RAMONA PLAZA LLC ET AL. | | |

    This argument is expressly foreclosed by Botosan v. Paul McNally Realty, 216 F.3d 827 (9th Cir. 2000).  In Botosan, the Ninth Circuit held that "[t]he express terms of the ADA hold a landlord liable for noncompliance."  Id. at 832.  Although a landlord and tenant may allocate responsibility between themselves, such allocation does not relieve the landlord of liability for violations of the ADA: "The power to waive or impose liability as against a third party resides only in Congress, and Congress has stated that both the landlord and tenant are liable under the Act."  Id. at 833.  Here, Jar-Ramona's lack of control over the internal workings of its tenant stores is, at bottom, a matter of contract between Jar-Ramona and its tenants.  Accordingly, although that lack of control may affect the allocation of liability between Jar-Ramona and its tenants, Jar-Ramona nonetheless remains liable for any violations of the ADA.

### D. Entrance Door to RadioShack

    Lastly, Jar-Ramona moves for summary judgment on the fifth Store Violation, which asserts that "[t]he entrance door at the Radio Shack Facility was narrow, making it difficult for Plaintiff to enter the store."  Compl. ¶ 10(c)(2).  Jar-Ramona tenders evidence that the RadioShack door provides 32.5" of clearance, which, they contend, meets ADA requirements.  See SSUF ¶ 23; ADA Accessibility Guidelines § 404.2.3 ("Door openings shall provide a clear width of 32 inches (815 mm) minimum.").

    In response, plaintiff does not dispute that the RadioShack door provides 32.5" of clearance, nor that this clearance is more than required by the ADA Accessibility Guidelines.  SSGD ¶ 10; Opp. 13-14.  Instead, plaintiff contends that the door, although wide enough, closed too quickly and had too high of a threshold for him to enter, all in violation of ADA requirements.  See Opp. 14, Shaw Decl. ¶ 8.  As these allegations are not contained in the original complaint, which alleges only that the door is too "narrow," the Court construes this argument as a request for leave to amend the complaint.  See Walsh v. Countrywide Home Loans, Inc., 435 F. App'x 607, 611 (9th Cir. 2011) ("[A] court may construe an opposition as a request for leave to amend even where, unlike here, no formal request for leave has even been made.").  This request is granted.  Upon receiving plaintiff's amended complaint, the Court will consider whether summary judgment is warranted as to claims pertaining to the RadioShack door.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**\*AMENDED CIVIL MINUTES - GENERAL**

| Case No. | 5:13-cv-01563-CAS(SPx) | Date | February 10, 2014 |
|---|---|---|---|
| Title | CECIL SHAW V. JAR-RAMONA PLAZA LLC ET AL. | | |

## V. CONCLUSION

In accordance with the foregoing, the Court GRANTS IN PART and DENIES IN PART Jar-Ramona's motion for summary judgment. **\*Summary judgment is granted as to the Common Area Violations alleged in subparagraphs (b)(2), (c)(1), and (d)(1) of the complaint.  Plaintiff's claims under the ADA and California Health and Safety Code § 19955, as based on subparagraphs 10(b)(1)and 10(e)(1), are dismissed as moot.**

IT IS SO ORDERED.

|  | 00 | : | 10 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |